IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Kenneth Dale Walker, | ) | C/A No.: 3:17-1935-MBS-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Progressive Casualty Insurance | ) | |
| Company; Christina Stewart; Kevin | ) | |
| Walston; and Jim Armstrong, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

In this employment discrimination case, Kenneth Dale Walker ("Plaintiff") sues his former employer, Progressive Casualty Insurance Company ("Progressive") and Progressive employees Christina Stewart ("Stewart"), Kevin Walston ("Walston"), and Jim Armstrong ("Armstrong"). Plaintiff filed this action on June 5, 2017, in the Richland County Court of Common Pleas. [ECF No. 1-1]. Defendants timely removed the action on July 21, 2017. [ECF No. 1]. The complaint contains causes of action for discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq*. ("ADEA"), wrongful discharge, and defamation against Progressive; tortious interference with a contract against Stewart; and civil conspiracy against Walston and Armstrong (collectively "Conspiracy Defendants"). All pretrial proceedings in this case have been referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(g) (D.S.C.).

This matter comes before the court on the motions to dismiss by Stewart [ECF No. 9] and by Conspiracy Defendants [ECF No. 10]. These motions having been fully briefed [ECF Nos. 12–15], they are ripe for disposition. Because the motions are dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant the motions to dismiss.

I.  Factual Background[1]

Plaintiff was hired by Progressive as a Claims Representative in 1989. Compl. ¶ 9. Plaintiff was promoted to claims manager for South Carolina and supervised eight supervisors and 50 claims representatives. *Id.* at ¶ 14.

Sometime before March 21, 2017, Plaintiff's receptionist, Cynthia Walker, engaged in an argument with a claims representative in front of other Progressive employees. *Id.* at ¶ 16. Stewart overheard the incident and reported it to Plaintiff. *Id.* at ¶ 17. Plaintiff verbally counseled Ms. Walker to refrain from such conduct in the future. *Id.* at ¶ 16. Stewart apparently disagreed with the verbal counseling and felt that Ms. Walker should have received more serious discipline from Plaintiff. *Id.* at ¶ 17. Stewart made a complaint using Progressive's corporate hotline accusing Plaintiff of showing favoritism to Ms. Walker. Specifically, Stewart noted favoritism by Plaintiff's relationship to Ms. Walker over the years, such as by assisting her with emergency bills and accommodating her with a flexible schedule. *Id.* at ¶¶ 15, 18–19.

---

[1] The court views the facts in the light most favorable to Plaintiff as the non-moving party. Fed. R. Civ. P. 12.

On March 21, 2017, Progressive Human Resources Consultant Dana Riley and Walston visited the Columbia office ostensibly for the purpose of conducting training. *Id.* at ¶ 21. While in Columbia, Riley and Walston approached Plaintiff about his handling of the incident between Ms. Walker and the claims representative. *Id.* at ¶ 22. On March 27, 2017, Plaintiff received an e-mail purporting to document the conversation with Riley and Walston from March 21, 2017, and requesting a response by noon the next day. *Id.* at ¶ 23. Plaintiff sent a response, but does not know if or when his response was reviewed. *Id.* On March 29, 2017, Walston informed Plaintiff, in Riley's presence, that the company had completed its investigation and that Plaintiff's employment was terminated based on an alleged improper out-of-work relationship with Ms. Walker. *Id.* at ¶¶ 24, 25.

Plaintiff alleges he was replaced with two less-qualified and less-experienced employees, at a greater overall cost to Progressive. *Id.* at ¶ 29. Armstrong was one of Plaintiff's replacements. *Id.* at ¶ 30. Plaintiff alleges that Walston had a preexisting friendship with Armstrong, who had wanted to transfer to the Columbia office. *Id.* at ¶ 31. Plaintiff alleges that Walston encouraged Plaintiff's termination so Armstrong could transfer to Columbia. Plaintiff alleges Walston and Armstrong's conduct was outside of the course and scope of their employment. *Id.* at ¶ 32.

Additionally, Plaintiff alleges that for the months preceding his discharge, Walston repeatedly criticized him for not closing bodily injury claims quickly enough and for conducting a thorough analysis of claims that involved suspected insurance fraud. *Id.* at ¶ 33. Plaintiff alleges the criticism was outside of Walston's course and scope of

employment and contravened the policies of Progressive as well as clear public policy mandates in South Carolina against insurance fraud. *Id*. at ¶ 34.

II. Discussion

   A. Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Indeed, "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the legal conclusion. *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001). Furthermore, in analyzing a Rule 12(b)(6) motion to dismiss, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs. Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

   B. Analysis

      1. Stewart's Motion to Dismiss

The elements of a cause of action for tortious interference with a contract are: (1) existence of a valid contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages. *Camp v. Springs Mortgage Corp.*, 426 S.E.2d 304, 305 (1993).

a. Contractual relationship

Stewart first argues that Plaintiff's allegation that he had an employment relationship with Progressive is insufficient to show that he had a contract or that his employment relationship would have continued indefinitely. Historically, the law has been clear that at-will employees nevertheless have a contractual relationships with their employers. *Cooper v. Lab. Corp. of Am. Holdings, Inc.*, 150 F.3d 376, 382 (4th Cir. 1998); *see also Sellers v. South Carolina Autism Soc., Inc.*, 861 F.Supp. 2d 692, 694–697 (D.S.C. 2012) (providing a thorough analysis of the relevant law on the contractual nature of an at-will employment relationship related to a claim pursuant to 42 U.S.C. § 1981).

Stewart argues that the South Carolina Court of Appeals ("Court of Appeals") recently deviated from allowing causes of action for tortious interference with a contract related to at-will employment in *Coves Darden, LLC v. Ibanez*, 2016 WL 4379419, No. 2014-339 (S.C. Ct. App. Aug. 17, 2016). In *Ibanez*, the Court of Appeals first held that the plaintiff's breach of contract claim was subject to dismissal because the plaintiff "had only an agreement for employment at will," which could not be breached as a matter of law. *Id*. Separately, the court held that, because the plaintiff's at-will employment relationship was not a "contract" capable of being "breached," the plaintiff's "tortious interference with contract" claim was also subject to dismissal. *Id*. ("Because we find [the plaintiff] cannot demonstrate a breach of contract, we find summary judgment was proper as to the tortious interference with a contract claim"). However, *Ibanez* is an unpublished case and the South Carolina Appellate Court Rules state that "unpublished orders have no precedential value." Rule 268(d)(2), SCACR. Therefore, the undersigned is not

persuaded that there is authority to dismiss Plaintiff's claim against Stewart on account of his status as an at-will employee.

### b. Stewart's role as agent of Progressive

Stewart also argues she was acting as an agent of Progressive when she made her complaint about Plaintiff because she was acting within the course and scope of her employment. She further argues that, because she was acting as an agent of Progressive, and because Progressive cannot interfere with a contract to which it is a party, Plaintiff's claim against Stewart should be dismissed. In response, Plaintiff argues that the complaint alleges "at least inferentially" that Stewart's conduct fell outside of the course and scope of her employment. [ECF No. 12 at 8].

Plaintiff does not appear to dispute, and the undersigned agrees, that Stewart cannot be held liable for tortious interference with a contract between Plaintiff and Progressive while she was acting within the course and scope of her employment with Progressive. Because the complaint does not allege that Stewart was acting outside of the course and scope of her employment, the undersigned recommends Stewart's motion to dismiss be granted on this basis.[2] The undersigned also recommends that Plaintiff be given an opportunity to amend the complaint, as set out below in the conclusion.

---

[2] Stewart also attacked the sufficiency of Plaintiff's factual allegations. Because the undersigned recommends an independent basis for granting the motion to dismiss and that Plaintiff be given an opportunity to amend, the undersigned does not discuss these arguments but notes that, if Plaintiff amends the complaint, he does so with knowledge of Plaintiff's arguments and may choose whether to cure any alleged deficiencies raised in those arguments.

However, Plaintiff is reminded that the rules require more than a recitation of the elements of a cause of action and the court is not required to accept legal conclusions.[3]

2. Conspiracy Defendants' Motion to Dismiss

In South Carolina, "[a] civil conspiracy exists when there is: (1) a combination of two or more persons; (2) for the purpose of injuring the plaintiff; (3) which causes the plaintiff special damage." *Cowburn v. Leventis*, 619 S.E.2d 437, 453 (S.C. Ct. App. 2005). "In order to establish a conspiracy, evidence, either direct or circumstantial, must be produced from which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise." *Id*.

"A civil conspiracy cannot be found to exist when the acts alleged are those of employees or directors, in their official capacity, conspiring with the corporation." *McMillan v. Oconee Memorial Hosp., Inc.*, 626 S.E.2d 884, 887 (S.C. 2006). As a result, "no conspiracy can exist if the conduct challenged is a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment." *Id*. Although a corporation cannot conspire with itself, "the agents of a corporation are legally capable, as individuals, of conspiracy among

---

[3] Stewart argues that she had authority to utilize Progressive's corporate compliance hotline regarding perceived policy violations. [ECF No. 15 at 5]. This statement is only an argument and is not before the court in a pleading. However, the undersigned notes that Plaintiff, from his former supervisory role with Progressive, likely knows whether Progressive authorizes employees to utilize the hotline for perceived policy violations. To the extent Stewart's complaint was authorized and based on her perceived subjective opinion, it appears it would be within the scope of her employment. The court is wary of creating precedent that an employee can be liable in an individual capacity for utilizing a hotline made expressly available by an employer to address perceived wrongs.

themselves or with third parties." *Lee v. Chesterfield Gen. Hosp., Inc.*, 344 S.E.2d 379, 383 (S.C. Ct. App. 1986).

          a.     Two or more persons

Besides alleging that Armstrong and Walston were friends and Armstrong replaced Plaintiff, Plaintiff's initial factual allegations do not mention Armstrong. In the allegations specific to his civil conspiracy claim, Plaintiff alleges that Armstrong and Walston's actions included "manufacturing and encouraging the use of frivolous grounds to justify Plaintiff's termination." Compl. at ¶ 67. However, Plaintiff has not alleged how Armstrong "manufactured or encouraged" the alleged frivolous grounds on which Progressive based Plaintiff's termination. In addition, there are no factual allegations suggesting that Armstrong contributed in any way to the decision to terminate Plaintiff.

To survive a motion to dismiss, a plaintiff must establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677. Although we are constrained to "take the facts in the light most favorable to the plaintiff," we need not accept legal conclusions couched as facts or "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quotations omitted). A plaintiff must "nudge[ ] [its] claims across the line from conceivable to plausible" to resist dismissal. *Twombly*, 550 U.S. at 570. Because Plaintiff has failed to show any plausible actions by Armstrong, he has failed to show "two or more persons" acted in concert to state a conspiracy claim.

Similarly, Plaintiff has failed to plead facts "from which a reasonable party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise." *Cowburn*, 619 S.E.2d at 453. Plaintiff has simply failed to allege any facts showing that Armstrong had any role whatsoever in his termination.

b. Special damages

Conspiracy Defendants argue that Plaintiff has not alleged special damages. Plaintiff argues that because there is no threat of double recovery from Conspiracy Defendants, special damages are not strictly required. [ECF No. 13 at 14]. Contrary to Plaintiff's argument, the South Carolina Supreme Court recently stated: "The gravamen of a civil conspiracy claim is the damage resulting to the plaintiff from the acts taken in furtherance of the combination; accordingly, the damages alleged must go beyond the damages alleged in other causes of action." *Allegro, Inc. v. Scully*, 791 S.E.2d 140, 144 (S.C. 2016*), reh'g denied* (Oct. 26, 2016). Although Plaintiff generally argues that the "damages in support of his conspiracy claim [] are distinct from his other claims in substance and form," he does not address the arguments by Conpiracy Defendants that address each specific category of damages and how they are duplicative of Plaintiff's other damages allegations. Therefore, Plaintiff's civil conspiracy claim lacks the requisite special damages to survive a motion to dismiss.

III. Conclusion

For the foregoing reasons, the undersigned recommends the court grant the motions to dismiss of Stewart [ECF No. 9] and of the Conspiracy Defendants [ECF No. 10]. The undersigned further recommends that the dismissal of Plaintiff's claims be

without prejudice with leave to file an amended complaint within 15 days of the district court's order on the motions to dismiss, if he so chooses. *See Ostrenski v. Seigel*, 177 F.3d 245, 252–53 (4th Cir. 1999). If the district judge accepts this recommendation and Plaintiff fails to file an amended complaint within 15 days of the district court's order on the motions to dismiss, Plaintiff's claims against Stewart, Walston, and Armstrong should be dismissed with prejudice.

    IT IS SO RECOMMENDED.

*Shiva V. Hodges*

September 15, 2017                                    Shiva V. Hodges
Columbia, South Carolina                  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).