IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Kenneth Dale Walker, | ) |
|         Plaintiff, | ) Civil Action No.: 3:17-cv-01935-JMC |
| v. | ) ORDER |
| Progressive Casualty Insurance Company, | ) |
|         Defendant. | ) |

This matter is before the court for review of the Magistrate Judge's Report and Recommendation ("Report") filed on November 6, 2018. (ECF No. 67.) The Report addresses Defendant Progressive Casualty Insurance Company's ("Defendant") Motion for Summary Judgment (ECF No. 54) and recommends granting Defendant's Motion for Summary Judgment as to Plaintiff Kenneth Dale Walker's ("Plaintiff") claim under the Age Discrimination in Employment Act ("ADEA") and remanding Plaintiff's remaining state law claims to the Lexington County Court of Common Pleas. (*Id.* at 2, 16.) The court heard arguments on March 4, 2019. (ECF No. 82.) For the reasons set forth herein, the court **ACCEPTS** and **MODIFIES** the Magistrate Judge's Report (ECF No. 67), incorporating it herein, **GRANTS IN PART** Defendant's Motion for Summary Judgment (ECF No. 54) as it relates to Plaintiff's ADEA claim, and **REMANDS** Plaintiff's remaining state law claims (ECF Nos. 1, 27, 43), including his Partial Motion for Summary Judgment (ECF No. 48), to the Lexington County Court of Common Pleas.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The Report provides a thorough examination of the facts, which this court incorporates herein without a full recitation. (ECF No. 67 at 3–6.) As brief background, Plaintiff was hired by

1

Defendant as a claims representative in 1989 and was eventually promoted to a claims manager position in 2014. (ECF No. 54-2 at 7; ECF No. 67 at 3.) During his employment as a claims manager, Plaintiff oversaw Cynthia Walker ("Walker"), a claims processor and receptionist, to whom he was not related. (ECF No. 54-2 at 9–10.) In addition to being Walker's supervisor, Plaintiff maintained a personal friendship with Walker, which was not romantic or sexual. (ECF No. 54-9 at 2; ECF No. 54-11 at 2–3; ECF No. 54-13 at 6–7; ECF No. 67 at 3.) On or about February 9, 2017, Plaintiff was approached by Christina Stewart ("Stewart"), one of his supervisees, about her observation of a verbal altercation between Walker and another employee named Summer Hills-Painter ("Hills-Painter"). (ECF No. 54-2 at 7–9, 11.) Plaintiff spoke with Walker about the incident and asked her to "apologize to those involved." (*Id.* at 15.) Stewart disagreed with Plaintiff's handling of the situation and believed that Walker should have been written up. (ECF No. 54-12 at 9.)

Following the incident, Dana Riley ("Riley"), Defendant's human resources consultant, contacted Stewart to discuss an unrelated matter regarding Hills-Painter. (ECF No. 54-6 at 8–11; ECF No. 54-12 at 6.) During that conversation, Stewart told Riley about the altercation between Walker and Hills-Painter. (ECF No. 54-6 at 11–12; ECF No. 54-12 at 6.) Riley testifies that, during their initial conversation, Stewart told her about Plaintiff having a "relationship outside of work" with Walker, but Stewart testifies that she told Riley about Plaintiff and Walker's friendship when Riley physically visited their job site. (ECF No. 54-6 at 13; ECF No. 54-12 at 13–14.) Regardless of the inconsistency between Riley and Stewart about when the conversation took place, Stewart previously stated that she "advised" Riley, in a meeting, that Plaintiff and Walker had a "relationship outside of work that started when his kids were young and continues to this day." (ECF No. 54-11 at 11–12.) Eventually, Riley opened an investigation into Plaintiff's management

of Stewart. (ECF No. 54-4 at 2; ECF No. 54-6 at 6, 15.) Riley's investigation revealed a personal friendship between Plaintiff and Walker, and Walker's time and attendance records revealed attendance issues. (ECF No. 54-4 at 4; ECF No. 54-13 at 8.)

On March 21, 2017, Riley, along with Kevin Walston ("Walston"), visited Plaintiff's office in order to conduct interviews of Plaintiff, Walker, and Stewart. (ECF No. 54-4 at 3; ECF No. 54-11 at 2–12.) After the interviews, Riley asked each interviewee to confirm or make additions to the information gathered from the interviews. (ECF No. 54-11.) Based upon the investigation, there was a recommendation of termination for Plaintiff. (ECF No. 54-8 at 2.) Defendant terminated Plaintiff on March 29, 2017, stating that he violated its Relationships at Work Policy ("the RWP")[1] by failing to report his personal friendship with Walker. (ECF No. 54-9.) Riley's investigation indicated that Plaintiff allowed his dog to stay with Walker and Walker's disabled sister, Walker kept an interest in Plaintiff's children, and Plaintiff assisted Walker with paying for emergency expenditures. (ECF No. 67 at 6.) (*See also* ECF No. 54-4 at 14.)

After his termination in March 2017, Plaintiff filed his Complaint against Defendant in the Lexington County Court of Common Pleas on June 5, 2017. (ECF No. 1-1 at 8–16.) Originally, Plaintiff brought claims under the ADEA, civil conspiracy, defamation, and tortious interference with contract. (*Id.*) Pursuant to 28 U.S.C. § 1441(a), Defendant removed the action to the United States District Court for the District of South Carolina on July 21, 2017, specifically invoking

---

[1] In part, Defendant's Relationships at Work Policy ("the RWP") requires the "disclosure of relationships that may create *actual or perceived conflicts of interests, favoritism, or discomfort in the workplace*." (ECF No. 54-4 at 14 (emphasis added).) According to the RWP, "[t]hese include any prior (including one-time) and/or current sexual, dating, or *intimate relationship*; any prior and/or current family relationship; any outside business relationship; and any sexual encounter." (*Id.* (emphasis added).) The RWP mandates a "manager or supervisor" to disclose "any relationship" subject to the policy. (*Id.*) "A failure to disclose a relationship that requires disclosure under [the RWP] . . . will result in disciplinary action up to and including termination of employment." (*Id.* at 15.)

3

federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. (ECF No. 1 at 1–4.) Upon filing a Second Amended Complaint on March 9, 2018, Plaintiff only presented claims under the ADEA, defamation, breach of contract, and public policy discharge. (ECF No. 43.) A few months later, on June 29, 2018, Plaintiff filed his Motion for Partial Summary Judgment, but only concerning liability for his breach of contract claim. (ECF No. 48.) On July 16, 2018, Defendant filed its Motion for Summary Judgment, seeking the entry of summary judgment on all of Plaintiff's claims. (ECF No. 54-1.)

The Magistrate Judge filed her Report on November 6, 2018. (ECF No. 67.) The Magistrate Judge recommends granting Defendant's Motion for Summary Judgment on Plaintiff's ADEA claim and remanding Plaintiff's remaining state law claims, including his Motion for Partial Summary Judgment, to the Lexington County Court of Common Pleas. (*Id.* at 2, 16.) First, as it relates to Plaintiff's ADEA claim, the Magistrate Judge determined that Plaintiff successfully established a *prima facie* case of age discrimination under the United States Supreme Court's *McDonnell Douglas* framework. (*Id.* at 9 n.1 (citing *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004)).) Putting it quite succinctly, the Magistrate Judge opined that Plaintiff "presented no evidence that Defendant *manufactured its explanation* for his termination and that his age was the 'but-for' cause of his termination." (*Id.* at 15 (emphasis added).) In the Magistrate Judge's view, because Plaintiff could not show pretext or but-for cause, Defendant was entitled to summary judgment on Plaintiff's ADEA claim as a matter of law. (*Id.*) Second, as it relates to Plaintiff's state law claims, the Magistrate Judge recommended that the court "remand the state law claims to the Lexington County Court of Common Pleas," but did not provide any reasoning for that recommendation. (*See id.* at 16.)

Both Plaintiff and Defendant specifically objected to the Report on November 20, 2018. (ECF Nos. 69, 70.) Plaintiff specifically asserts that the Report resolves a disputed material fact about the human resources investigation and does not consider all his pretext arguments. (ECF No. 70 at 5–6.) Additionally, Plaintiff argues that disproving or rebutting Defendant's legitimate, nondiscriminatory reason is sufficient to overcome summary judgment and "may give rise to a jury issue" under *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). (*Id.*) Naturally, Defendant did not object to the Magistrate Judge's finding regarding Plaintiff's ADEA claim, however, Defendant did object to the Magistrate Judge's recommendation of remanding Plaintiff's state law claims. (ECF No. 69 at 3.) Defendant contends that the Report fails to address the relevant factors for the court's exercise of supplemental jurisdiction and argues that those factors, such as judicial economy and comity, weigh in favor of the court retaining jurisdiction over the state law claims and granting the entirety of its Motion for Summary Judgment. (*Id.* at 3–5.)

On March 4, 2019, the court heard arguments from both parties regarding the Magistrate Judge's Report. During the hearing, Defendant argued for retaining supplemental jurisdiction over Plaintiff's state law claims. If his ADEA claim is dismissed, Plaintiff emphasized that this matter was first filed in the Lexington County Court of Common Pleas, complex state law is implicated, and the Magistrate Judge's Report does not analyze the state law claims, thereby warranting remand to state court. Plaintiff also maintained that he presented sufficient evidence of pretext under the ADEA, thereby allowing him to reach a jury and survive Defendant's Motion for Summary Judgment. Defendant vigorously argued that Plaintiff has failed to show that age was the but-for cause of his termination. Because this matter has been extensively argued and briefed, it is now ripe for the court's review. *See generally Sauls v. Wyeth Pharm., Inc.*, 846 F. Supp. 2d 499, 501 (D.S.C. 2012) ("The parties have fully briefed the issues, and this matter is ripe for

consideration.").

## II. LEGAL STANDARD

### A. The Magistrate Judge's Report

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina. The Magistrate Judge only makes a recommendation to this court, and the recommendation has no presumptive weight. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The responsibility to make a final determination remains with the court. *Id.* at 271. As such, the court is charged with making de novo determinations of those portions of the Report to which specific objections are made. *See* 28 U.S.C. § 636(b)(1). *See also* FED. R. CIV. P. 72(b)(3). In the absence of specific objections to the Magistrate Judge's Report, the court is not required to give any explanation for adopting the Report. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Rather, "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting FED. R. CIV. P. 72 advisory committee's note). Thus, the court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommendation or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

### B. Summary Judgement Under FED. R. CIV. P. 56(a)

A federal court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). In a summary judgment motion, "[a] court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)). Nevertheless, "the nonmoving party . . . must offer some 'concrete evidence from which a reasonable juror could return a verdict in his [or her] favor.'" *Williams v. Genex Servs., LLC*, 809 F.3d 103, 109 (4th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). Summary judgment is therefore appropriate "when the nonmoving party has the burden of proof on an essential element of her case and does not make, after adequate time for discovery, a showing sufficient to establish that element." *Id.* (citing *Celotex Corp.*, 477 U.S. at 322–23).

### III. DISCUSSION

Both Plaintiff and Defendant present specific objections to the Magistrate Judge's Report. (ECF Nos. 69, 70.) Plaintiff specifically objects to the Report on the following three grounds: (1) the Magistrate Judge improperly determined a disputed material fact concerning the testimony of Riley; (2) his evidence sufficiently shows that Defendant's legitimate, nondiscriminatory reason is false, thereby allowing him to reach a jury; and (3) the Magistrate Judge failed to consider all of his arguments regarding possible pretext. (ECF No. 70 at 4–6.) Defendant only presents one objection to the Magistrate Judge's Report. (ECF No. 69.) Defendant specifically objects to remanding Plaintiff's remaining state law claims because the Magistrate Judge's Report fails to analyze the relevant factors guiding the court's exercise of supplemental jurisdiction. (*Id.* at 2.) Defendant requests the court to exercise supplemental jurisdiction over Plaintiff's remaining state

law claims and grant its Motion for Summary Judgment in its entirety. (*Id.* at 2–6.) The court will consider all of these objections in turn, beginning with those of Plaintiff.

A. **Plaintiff's Objections Regarding the ADEA**

    i. Riley's Testimony and a Material Fact

Plaintiff argues that the Magistrate Judge's Report makes an improper determination about a disputed material fact, which should have been left for a jury's consideration. (ECF No. 70 at 4–5.) Specifically, Plaintiff believes that the Magistrate Judge's Report errs when it states that "Riley inferred from Stewart's comments that Plaintiff's friendship with [Walker] played a role in how Plaintiff managed her." (*Id.* at 5 (citing ECF No. 67 at 5).) Plaintiff contends that this is error because Stewart denied telling Riley information about his friendship with Walker. (*Id.*)

At the summary judgment stage, a factual dispute raised by a non-moving party must be "genuine" and "material." *See* FED. R. CIV. P. 56(a). To determine if a fact is "material," a federal court is guided by the substantive law at issue, which will identify the facts that are material and those that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. The United States Supreme Court has instructed that the substantive law identifies "which facts are critical and which facts are irrelevant . . . ." *Id.* Put simply, "[a] fact is 'material' if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case." *Agee v. Wayne Farms LLC*, C/A Nos. 2:07cv1010–KS–MTP, 2:07cv1011–KS–MTP, 2008 WL 5398743, at *1 (S.D. Miss. Dec. 19, 2008) (citing *Anderson*, 477 U.S. at 248). The mere existence of "some alleged factual dispute" is insufficient to defeat a well-supported summary judgment motion. *Anderson*, 477 U.S. at 247–48. "A dispute over irrelevant or unnecessary facts will not preclude summary judgment, but the presence of unresolved factual issues that are material to the outcome

8

of the litigation mandates a denial of summary judgment." *GSGSB, Inc. v. N.Y. Yankees*, 862 F. Supp. 1160, 1170 (S.D.N.Y. 1994) (citations omitted).

The ADEA prohibits employers from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 28 U.S.C. § 623(a)(1). While the investigation and ultimate termination of Plaintiff are material to the ADEA's scheme, in this instance, the conversation that gave rise to the pre-termination investigation would not "affect the outcome of the suit" because Riley documented her conversation with Stewart, and Stewart subsequently affirmed the contents of the conversation before later denying, in her deposition, *when* the conversation happened. (ECF No. 54-6 at 13; ECF No. 54-11 at 11–12.) In fact, in her deposition, Stewart testified that she participated in *a conversation* with Riley during which she conveyed her knowledge of the friendship between Plaintiff and Walker. (ECF No. 54-12 at 10; ECF No. 62-2 at 11.) Regardless of *when the conversation occurred* between Stewart and Riley, there is no dispute that *a conversation*, concerning Plaintiff and Walker's friendship, occurred. Indeed, there is an ancillary factual dispute and credibility issue, but not one that is "material" or one that would "affect the outcome of the suit" because the dispute over the conversation's specific time and place provides little guidance about the ultimate question of age discrimination under the ADEA. *See generally Polycast Tech. Corp. v. Uniroyal, Inc.*, 792 F. Supp. 244, 249 (S.D.N.Y. 1992) ("While the party resisting summary judgment must show a dispute of fact, it must also be a material fact in light of the substantive law."); *Allstate Ins. Co. v. Shockley*, 793 F. Supp. 852, 854 (S.D. Ind. 1991) ("Moreover, the mere existence of a factual dispute is not by itself sufficient to bar summary judgment; the disputed fact must be outcome determinative." (citations omitted)); *Childs v. Runyon*, C/A No. 95–705(CKK), 1998 WL 1181190, at *3 (D.D.C. June 2, 1998)

9

(determining that a letter sent by a plaintiff to a defendant, which the defendant claimed to have not received, was not a material fact to the outcome of the case). Noticeably, Plaintiff has not indicated how a dispute over the conversation's specific time and place affects the outcome of his ADEA claim. (*See* ECF No. 70 at 5.) For these reasons, the court overrules Plaintiff's first objection to the Magistrate Judge's Report.

ii. Rebutting Defendant's Legitimate, Nondiscriminatory Reason

Plaintiff's second objection submits that "where a [p]laintiff establishes her prima facie case and presents evidence that an employer's asserted reason for an adverse action is false, that [alone] may give rise to a jury issue." (ECF No. 70 at 5–6.) Plaintiff relies upon *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), to argue that he has provided "competent . . . evidence" that establishes a "triable age claim." (*Id.* at 6.) Plaintiff's interpretation and reliance upon *Reeves* is woefully misguided.

In *Reeves*, the Supreme Court clarified the respective evidentiary burdens of opposing parties under its *McDonnell Douglas* framework. 530 U.S. at 142–49. Specifically, the Court stated that "a plaintiff's prima facie case, *combined with sufficient evidence* to find that the employer's asserted justification is false, *may permit* the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148 (emphasis added). The Court went on to state that there "will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, *no rational factfinder could conclude that the action was discriminatory.*" *Id.* (emphasis added). By way of example, the Court provided the following:

> For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created *only a weak issue of fact as to whether the employer's reason was untrue* and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Id.* (emphasis added) (citation omitted). The Court further explained that: "Whether judgment as a matter of law is appropriate in any particular case *will depend on a number of factors*. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Id.* at 148–49 (emphasis added). In contrast to Plaintiff's attenuated position, *Reeves* holds that a plaintiff's *prima facie* case may *sometimes* overcome a defendant's motion for summary judgment, but not in all instances. *See id. Reeves* does not stand for the proposition that a plaintiff *always overcomes* summary judgment, thereby reaching a jury, by simply establishing a prima facie case or by rebutting a defendant's legitimate, nondiscriminatory reason. *See id.*

The Magistrate Judge determined that "Plaintiff . . . presented no evidence that Defendant *manufactured its explanation* for his termination and that his age was the 'but-for' cause of his termination." (ECF No. 67 at 15 (emphasis added).) To rebut the Report, Plaintiff cites to Riley's deposition and Defendant's Handbook. (ECF No. 70 at 5.) Within the cited portions of Riley's deposition, Riley testifies that Plaintiff was terminated because he violated the RWP and not just for failing to report his relationship with Walker. (ECF No. 62-1 at 34–35.) Riley's deposition testimony supports Defendant's legitimate, nondiscriminatory reason for terminating Plaintiff, which was his purported violation of the RWP, and does not suggest that Defendant's reason for terminating Plaintiff is false. (*Compare* ECF No. 62-1 at 34–35, *with* ECF Nos. 54-8, 54-9.) Plaintiff also cites to the RWP and suggests that Defendant's legitimate, nondiscriminatory reason is false. (ECF No. 70 at 5.) (*See also* ECF No. 62-7.) Riley's deposition testimony does not conflict with the RWP, rather the RWP states that "[Defendant] require[s] disclosure of relationships that may create actual or perceived *conflicts of interest* . . . ." (*Compare* ECF No. 62-1 at 34–35, *with*

ECF No. 54-4 at 14.) The RWP also applies to acts of favoritism and to any intimate relationship. (*See* ECF No. 54-4 at 14.) Riley's deposition is entirely consistent with Defendant's policy and does not show a manufactured explanation on the part of Defendant. (*Compare* ECF No. 62-1 at 34–35, *with* ECF No. 54-4 at 14.) Lastly and quite tellingly, during the hearing and within his Objections, Plaintiff does not even use the word "age" to describe the nature of the discrimination he apparently suffered. (*See* ECF No. 70 at 5–6.) This is a case in which "the probative value of proof that [Defendant's] explanation is false" has not been shown. 530 U.S. at 148–49. Thus, Plaintiff's objection is overruled because it misapprehends the nature of federal anti-discrimination precedent and the evidentiary burdens under the *McDonnell Douglas* framework.

iii. <u>Plaintiff's Other Arguments Implicating Pretext</u>

Within his last objection, Plaintiff argues that the Magistrate Judge failed to consider all of his pretext arguments. (ECF No. 70 at 6.) Specifically, Plaintiff alleges that the Magistrate Judge only considered his "comparative treatment" argument and failed to address the following pretext arguments: (1) "the falsity of the explanation"; (2) "a subjective and incomplete investigation"; and (3) "the punishment does not fit the crime." (*See id.*) Plaintiff does not object to the Magistrate Judge's comparative analysis, thereby waiving any objection on that ground. (*See id.*) Therefore, the court need only consider whether Plaintiff has shown pretext pursuant to the "falsity of the explanation," "a subjective and incomplete investigation," and "the punishment does not fit the crime." (*See id.*)

First, as it relates to "the falsity of the explanation," Plaintiff maintains that he was terminated for not "engag[ing] in any of the relationships specially listed by that policy." (ECF No. 62 at 28.) As the Magistrate Judge appropriately concluded, "Plaintiff disagrees with Defendant's interpretation of the RWP and believes that his friendship with [Walker] and the

12

perceptions arising therefrom should not have resulted in termination." (ECF No. 67 at 15.) The RWP is broad because it specifically requires the "disclosure *of relationships* that may create *actual or perceived conflicts of interests, favoritism, or discomfort in the workplace.*" (ECF No. 54-4 at 14 (emphasis added).) According to its explicit terms, the policy's broad language clearly encompasses friendships that may create an "actual or perceived conflict[] of interest." (*Id.*) The word "relationships" *is not qualified or limited* to affectionate, neighborly, or sexual relationships; personal friendships are plainly within the RWP's scope. (*See id.*) Indeed, the RWP specifically covers "intimate relationship[s]." (*Id.*) Plaintiff's argument regarding pretext is unavailing because he did not need to engage in a sexual relationship with Walker to be subject to the RWP and has failed to show that Defendant's reliance upon the RWP is pretext.

Plaintiff also argues that the "subjective and incomplete investigation" and "the punishment [] not fit[ting] the crime" are sufficient to show pretext. (ECF No. 70 at 6.) Both of Plaintiff's objections miss the mark. First, considering his objections to a "subjective and incomplete investigation," Plaintiff maintains that he was improperly terminated before Riley received all of the responses from the interviewed witnesses, which "could" indicate pretext. (ECF No. 62 at 28–29.) Upon the court's review, Plaintifff's contention is without factual merit because Riley received interview confirmations from Walker on March 27, 2017, and from Plaintiff and Stewart on March 28, 2017.[2] (ECF No. 54-11.) These confirmations were at least a day before Plaintiff's termination, which was on March 29, 2017. (*Compare* ECF No. 54-11, *with* ECF No. 54-9.) Plaintiff's objection is plainly at odds with the facts. Second, as it relates to his "punishment [] not fit[ting] the crime," Plaintiff relies upon *Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285 (7th

---

[2] An individual named Kelle Ann George also confirmed and clarified parts of her interview on March 28, 2017, a day before Plaintiff's termination. (ECF No. 54-11 at 4–5.)

Cir. 1999). (ECF No. 62 at 29–30.) In *Stalter*, a plaintiff, who was African-American, showed that his employer did not terminate a Caucasian employee who "also committed gross misconduct . . . ." 195 F.3d at 290–91. As opposed to termination, the Caucasian employee was merely "counseled" and "allowed to keep her job." *Id.* at 291. Additionally, the plaintiff in *Stalter* showed that his employer "changed its story between the time of the state administrative proceeding and the federal action." *Id.* Here, Plaintiff's reliance upon *Stalter* is inapposite. Plaintiff has not shown that Defendant "changed its story," but has shown that Defendant's proffered termination decision has been consistent throughout the litigation. (*Compare* ECF No. 62-1 at 34–35, *with* ECF No. 54-4 at 14.) Plaintiff has also waived any objection about "comparative treatment," and, therefore, cannot show that a younger employee, who may be appropriately compared to him, was not terminated for similar "gross misconduct." (*See* ECF No. 70 at 6.) Put simply, the court agrees with the Magistrate Judge's Report and concludes that Plaintiff has failed to show pretext. (ECF No. 67 at 15–16.)

Lastly, the Magistrate Judge's Report notes that Plaintiff has not shown that age was the but-for cause of his termination. (ECF No. 67 at 14–16.) Most notably, within his Objections and during the hearing, Plaintiff failed to object to the Magistrate Judge's conclusion regarding his failure to show but-for cause under the ADEA. (*Compare id.*, *with* ECF No. 70 at 6.) But-for cause is an explicit requirement for ADEA claims, and plaintiffs carry the burden on this element. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 157, 177–80 (2009) ("We hold that a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action."). For purposes of the court's review, Plaintiff has conceded the but-for cause requirement, an essential element of his action, thereby making summary judgment appropriate for Defendant on the ADEA claim.

14

*Williams*, 809 F.3d at 109 (citing *Celotex Corp.*, 477 U.S. at 322–23). For these reasons, Plaintiff's last objection is overruled and without merit.

**B. Defendant's Objections Concerning Supplemental Jurisdiction**

Defendant specifically objects to the Magistrate Judge's Report by arguing that the Report "neither addressed nor considered" factors that assist with determining whether a federal district court should exercise supplemental jurisdiction over state law claims. (ECF No. 69 at 2–3.) Upon the court's review of the Report, the Magistrate Judge did not undertake such an analysis before recommending that the court remand Plaintiff's state law claims.³ (*See* ECF No. 67 at 16.) Defendant argues that the factors, including the time spent within this court, convenience and fairness, judicial economy, and importance of the state law issues, "weigh[] heavily in favor of the [c]ourt retaining jurisdiction." (ECF No. 69 at 3.)

Under 28 U.S.C. § 1367(a), federal district courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Even though a federal district court "shall have supplemental jurisdiction" over related claims within the scope of the court's original jurisdiction, district courts "may decline to exercise supplemental jurisdiction over a claim" if (1) "the claim raises a novel or complex issue of [s]tate law"; (2) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction"; (3) "*the district court has dismissed all claims over which it has original jurisdiction*"; or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c) (emphasis added). Generally, when a federal district

---

³ Because the Magistrate Judge did not undertake an analysis of supplemental jurisdiction under 28 U.S.C. § 1367(a), the court modifies the Report in this regard. *See* 28 U.S.C. § 636(b)(1).

15

court has dismissed the only federal claim providing it with original jurisdiction, it may remand the remaining state law claims to state court. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). The court possesses "wide latitude" in determining whether to retain supplemental jurisdiction under 28 U.S.C. § 1367(a). *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (citing *Nobel v. White*, 996 F.2d 797, 799 (5th Cir. 1993)). The court may consider "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Id.* (citations omitted). Based upon the court's review above, the court will grant Defendant's Motion for Summary Judgment as it relates to Plaintiff's ADEA claim, the only federal claim. *See supra* Part III.A. Thus, the only three claims remaining are those based upon state law, including claims for defamation, public policy discharge, and breach of contract. (*See* ECF No. 43 at 8–10.)

First, in considering the convenience and fairness to the parties, Plaintiff originally filed this action, which only had one federal claim, in state court, and it was removed by Defendant in the exercise of its rights. (*See* ECF No. 1.) Therefore, Plaintiff has a clear preference for state court, while Defendant desires federal court. (*See id.*) *See generally Ndanyi v. Aureon HR I Inc.*, C/A No. 6:18-2531-HMH-JDA, 2018 WL 6065354, at *1–2 (D.S.C. Nov. 20, 2018) (overruling an objection asking the court to retain supplemental jurisdiction); *Varner v. SERCO, Inc.*, C/A No. 2:16-cv-2340-DCN, 2018 WL 1305426, at *4 (D.S.C. Mar. 12, 2018) (exercising supplemental jurisdiction when a plaintiff originally filed his lawsuit in federal court). Secondly, regardless of

the similarity of the facts, there is no federal policy or interest in litigating the remaining state law claims in federal court when the only federal claim is extinguished. *See Ferrara v. Hunt*, C/A No. 0:09–2112, 2012 WL 1044488, at *6 (D.S.C. Mar. 28, 2012) (holding that there was no federal policy in litigating remaining state law claims, brought under the South Carolina Tort Claims Act, for malicious prosecution and defamation in federal court because the only federal claim, brought under 28 U.S.C. § 1983, was dismissed). The remaining state law claims do not have any federal implications because they are all rooted in the common law of South Carolina. *See Coker v. Int'l Paper Co.*, C/A No. 2:08–1865–DCN–BM, 2010 WL 1073643, at *3 (D.S.C. Mar. 18, 2010) ("The garden variety state contract and tort claims at issue do not implicate any underlying issues of federal policy.").

Third, comity favors the remand of this matter to state court. Plaintiff brings a defamation claim against Defendant, which is an unpredictable area of law within South Carolina. *See Holtzscheiter v. Thomson Newspapers, Inc.*, 506 S.E.2d 497, 514 (S.C. 1998) (Toal, J., concurring) ("I am firmly convinced that the present status of our defamation jurisprudence is so convoluted, so hopelessly and irretrievably confused, that nothing short of a fresh start can bring any sanity, and predictability, to this very important area of law."). Plaintiff also brings a public policy discharge claim under South Carolina law. (ECF No. 43.) Public policy discharge is a common law exception to South Carolina's employment-at-will doctrine. *See Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213, 224–25 (S.C. 1985). Because "state appellate courts have since allowed some cases to go forward and in others have refused to allow such," a state court is better suited to consider Plaintiff's public policy discharge claim because Plaintiff's only federal claim is dismissed. *See Cunningham v. Aiken Reg'l Med. Ctrs., Inc.*, C/A No. 1:07-2746-RBH, 2009 WL 2243766, at *2 (D.S.C. July 24, 2009). Lastly, judicial economy does not disfavor remand to state

court merely because the parties have completed discovery and briefed their state law claims. *See generally Ryals v. City of Hanahan*, C/A No. 2:17-cv-2185-RMG, 2018 WL 6061226, at *3 (D.S.C. Nov. 20, 2018) ("There are no issues of judicial economy weighing against remand as discovery is complete and the case is pending resolution."). Indeed, the Magistrate Judge's Report does not even address Plaintiff's remaining claims, and the court would also be examining those claims in the first instance. (*See* ECF No. 67.) As such, judicial economy does not favor supplemental jurisdiction and favors remanding the action to the Lexington County Court of Common Pleas.

Based upon the foregoing, there is no federal policy implicated by the remaining state law claims and comity is in favor of remanding the state law claims to state court. Further, judicial economy favors remanding the state law claims. Lastly, fairness and convenience do not cut against remanding this action. For these reasons, the court will decline the exercise of supplemental jurisdiction over Plaintiff's remaining state law claims. Therefore, Defendant's objections to the Report are overruled, but the court modifies the Report as it relates to including an analysis about the court's supplemental jurisdiction.

## IV. CONCLUSION

After careful consideration of the dispositive pleadings, the Magistrate Judge's Report, the parties' objections, and the parties' arguments at the hearing, the court **ACCEPTS** and **MODIFIES** the Magistrate Judge's Report and Recommendation (ECF No. 67), incorporating it herein, and finds it to be thorough and extremely well-reasoned. Therefore, the court **GRANTS IN PART** Defendant's Motion for Summary Judgment (ECF No. 54), as it relates to Plaintiff's ADEA claim, and **REMANDS** Plaintiff's remaining state law claims (ECF Nos. 1, 27, 43),

including his Partial Motion for Summary Judgment (ECF No. 48), to the Lexington County Court of Common Pleas for further proceedings.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

March 8, 2019
Columbia, South Carolina